IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**CHARLES JORDAN**                                                                  **PLAINTIFF**

v.                                                                          No. 4:22CV183-JMV

**WARDEN TRACY MACDONALD, ET AL.**                     **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Charles Jordan, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. *See* 42 U.S.C. § 1997e. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that, during his confinement within the Mississippi State Penitentiary, he suffered inhumane conditions. Doc. 1. The defendants have moved [38] for summary judgment, arguing that the case should be dismissed because the plaintiff did not exhaust his administrative remedies before filing the instant suit. The plaintiff has responded; the defendants have replied, and the matter is ripe for resolution. For the reasons set forth below, the motion [38] by the defendants for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.

**The Plaintiff's Claims**

The plaintiff alleges that, during his stay at the Mississippi State Penitentiary: (1) his laundry was not picked up; (2) the facility was infested with mice and roaches, (3) there was a lack of cleaning supplies, and (4) he and other inmates were not given adequate air conditioning. *See, generally* Doc.

1. The plaintiff argues that, by housing him in these conditions, the defendants violated the Eighth Amendment prohibition against cruel and unusual punishment.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986);

*Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### The Plaintiff Did Not Exhaust His Administrative Remedies Before Filing Suit[1]

It is clear on the record before the court that the plaintiff did not exhaust his administrative remedies before filing the instant suit, as required under the Prison Litigation Reform Act:

> No action shall be brought with respect to prison conditions under [42 U.S.C.§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other prison until such administrative remedies as are available are exhausted.

*See* 42 U.S.C. § 1997e(a). Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). The exhaustion requirement serves to weed out frivolous claims from the colorable ones. *Id*. at 203. The

---

[1] The parties have provided documentary evidence regarding the grievance process as to each of the plaintiff's claims. In the discussion below, the court will draw undisputed facts from these sources, as needed, to identify and discuss the parties' arguments regarding whether the plaintiff exhausted his administrative remedies before filing the instant suit.

- 3 -

requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006).

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11, 2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought … cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

## The Mississippi Department of Corrections
## Administrative Remedy Program

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections ("MDOC") the authority to adopt an administrative review procedure at each of its prisons. Under this statutory authority, MDOC created the Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994).

**Screening Phase**

At the screening phase of the ARP process, an inmate must submit his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident.[2] *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether to accept it into the formal ARP process. *Id*. This screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances.[3]

As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance – or appeal of a rule violation. *Woodford, supra*. Hence, rejection of

---

[2] If an inmate is found guilty of a prison rule violation, he may appeal that finding through the ARP process, as well. Inmate Handbook, Section VIII, Paragraph XI. However, the appeal of a rule violation through the ARP is a one-step process (in contrast to the two-step process for resolving grievances). *Id*.

[3] The submission and screening of the plaintiff's complaints do not constitute the beginning of the ARP process. Instead, the formal ARP grievance process begins when the inmate's submission is "accepted" as a grievance *after* initial screening. Inmate Handbook, Chapter VIII, Paragraph IV(H).

a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of the prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf ("Inmate Handbook, Chapter VIII, Administrative Remedy Program") (last visited April 3, 2019)).

**First Step**

If accepted as a valid grievance, the complaint enters the First Step – and is forwarded to the appropriate official, who then issues a First Step Response to the complaining inmate. *Id*. *Howard, supra*. An inmate may pursue only one grievance at a time; additional requests "will be logged and set aside for handling at the Director's discretion":

> If an inmate submits additional requests during the period of Step One review of his request, *the first request will be accepted and handled*.[4] The others will be logged and

---

[4] Hence, only the first grievance will be accepted; while it is pending, any subsequent ones will be backlogged. The grievance process will not begin for the second grievance until the first grievance has been resolved. Likewise, the process will not begin for the third grievance until the second has been resolved, and so on – until no more grievances are backlogged. The backlogging of

set aside for handling at the Director's discretion. A maximum of ten requests will be logged. Requests above that number will be returned to the inmate and not filed.

Inmate Handbook, Chapter VIII, Administrative Remedy Program, VII(A) (emphasis added).

**Second Step (Completion of the Grievance Process)**

If the inmate is unsatisfied with the First Step response, he may continue to the Second Step by completing an appropriate grievance form and sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden, or Community Corrections Director will then issue a final ruling, or Second Step Response, which completes the ARP grievance process. *Id*. Issuance of the Second Step Response is one of two ways to complete the process.[5] If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id*.

**Contents of a Grievance**

The Inmate Handbook requires that a grievance "present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident." *See Pinkton v. Jenkins*, 2019 WL 1089087, *3 (N.D. Miss. 2019). Although a plaintiff is "not required to present specific legal theories in his grievances, . . . he [is] required to provide facts and to alert prison officials of the problem in order to give them an opportunity to address it."

---

grievances in this manner does not run afoul of the Constitution or the Prison Litigation Reform Act. *See Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015).

[5] The grievance process will also be deemed complete if more than 90 days elapses from the beginning of the process (acceptance of the grievance after screening) without issuance of a Second Step Response Form (the normal way to complete the grievance process). Inmate Handbook, Chapter VIII, Paragraph VIII(A). In the absence of a response in a step of the ARP process, the inmate may not simply wait for the 90-day deadline to expire. *Id*. Instead, for each step without a response, he must wait until the deadline for a written response for that step expires, then move to the next step in the process. *Id*. If the inmate has submitted the proper forms for each step, yet 90 days elapses without issuance of a Second Step Response Form, then he has completed the grievance process and may seek relief in State or Federal court.

*Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). "[T]his portion of [MDOC's] ARP requires that all officials involved be named or at least referenced in description." *Holton v. Hogan*, 2018 WL 707544, *3 (S.D. Miss. 2018); *see also Pinkton*, 2019 WL 1089087 at *3 (dismissing claims against two defendants for failure to exhaust administrative remedies where plaintiff never filed a grievance regarding the actions of the two defendants).

## Discussion

As discussed in detail below, the plaintiff did not complete the grievance process as to any of his claims before filing the instant suit. Doc. 44-1 (Affidavit of Investigator Cornelius Cox). He did not file a grievance at all as to his allegations that the climate control measures were insufficient – and thus has not exhausted his administrative remedies as to that claim. *Id*. In addition, though he filed a grievance regarding the lack of cleaning supplies, that grievance was placed on backlog and is currently pending. *Id.*; Doc. 40-8. Further, though he completed the grievance process as to his remaining two claims – deficient laundry services and vermin infestation – he did not do so before filing the instant lawsuit. The court will discuss the plaintiff's grievances (including both possible paths to exhaustion of administrative remedies).

## Scrivener's Errors in Grievance Documentation

Administrative Remedy Program staff made several scrivener's errors while documenting the progress of Jordan's claims through the grievance process, and the court will identify these errors so that the analysis of exhaustion of remedies is clear. First, ARP staff sent Jordan letters informing him that two of his grievances had been placed on backlog until a previous grievance was resolved. Docs. 40-7 (letter regarding laundry), 40-8 (letter regarding cleaning supplies). Though each letter correctly identified the issue of the related grievance, both letters referred to the same grievance number: MSP-22-864 (the number assigned to the laundry grievance). As

such, the court has looked to the *contents* of each letter (rather than the grievance number) to identify the related grievance.

In addition, despite the letter stating that the laundry grievance (MSP-22-864) had been backlogged, it nonetheless moved forward. Doc. 38-3, pp. 1-11. However, there was a five-month delay between Jordan's completion of the First Step (stating that he was unsatisfied with the First Step Response, signed on November 2, 2022) and the completion of the Second Step on April 18, 2023. *See* 38-3 at 6 (not satisfied with First Step Response); 38-3 at 7 (Second Step Response Form). As discussed below, this delay does not affect the resolution of the exhaustion issue.

Finally, the ARP assigned the *same* grievance number (MSP-23-474) to both the grievance involving vermin and the one involving cleaning supplies. *See* Doc. 44-1. Again, the grievance responses in MSP-23-474 mentioned only the vermin issue, but the use of the same number for two grievances is potentially confusing. *See* Doc. 38-4, pp. 1-9 (grievance responses all involved the complaint regarding vermin); Doc. 44-1 (grievance regarding cleaning supplies was backlogged and is still pending). Despite these scrivener's errors, the record makes clear that Jordan filed the instant suit before completing the ARP process as to any of the relevant grievances. The court will examine the progress of each grievance below.

### Plaintiff's Claim That Prison Staff Did Not Launder Inmates' Clothes

On October 3, 2022, Jordan submitted a written ARP complaint (No. MSP-22-864) regarding his laundry. Doc. 38-3 at 2. The ARP complaint was accepted on October 18, 2022. *Id*. at 1. Deputy Warden Sequcia Wren submitted a First Step Response on October 21, 2022. *Id*. at 5. On November 2, 2022, Jordan indicated on the ARP form that he was not satisfied with the first-step response and wished to proceed to the Second Step. *Id*. at 6. On November 16, 2022, he filed this lawsuit. Doc. 1.

On April 18, 2023, he received a Second Step Response, completing the ARP grievance process. Doc. 38-3 at 7. As to his claim regarding laundry, Jordan exhausted his administrative remedies the ordinary way – by receiving the April 18, 2023, Second-Step Response; however, he did so *after* filing the instant suit on December 1, 2022.[6]

**Plaintiff's Claim That the Prison Was Infested with Vermin**

On October 9, 2022, Jordan submitted a grievance (MSP-23-474) regarding the infestation of mice and roaches. Doc. 38-4 at 2. The grievance was initially accepted on November 21, 2022.[7] On December 1, 2022, before receiving a first-step response, Jordan filed this lawsuit. Doc. 1. A first-step response issued on May 2, 2023. Ex. 4, MSP-23-474, p. 5. After indicating that he was not satisfied with his first-step response, he received a second step response on June 1, 2023. *Id*. at pp. 7-8. As Jordan filed suit before receiving the Second Step Response to his grievance, he did not timely exhaust his administrative remedies by that path. *See* 42 U.S.C. § 1997e.

**Plaintiff's Claim That Prison Staff Did Not Provide Cleaning Supplies**

Charles Jordan submitted a grievance regarding the lack of cleaning supplies on November 9, 2022. Doc. 38-4 at 3. As discussed above, the grievance was accepted on April

---

[6] Under the "mailbox rule," a prisoner's document is deemed filed when he delivers it to prison officials for mailing to the district court. *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir.1998) (relying on *Houston v. Lack* and its progeny). Hence, in this case, Jordan's complaint was "filed" somewhere between November 16, 2022 (the date he signed it) and December 1, 2022 (the date it was received and stamped "Filed" in this court). Doc. 1. For the purposes of his memorandum opinion, the court has given Jordan the benefit of the doubt by using the later date.

[7] This ARP grievance screening form has two dates: November 21, 2022, and April 25, 2023. This grievance was initially accepted on November 21, 2022, and proceeded (as number MSP-23-474) as to the vermin issue. Doc. 38-4. Then, on April 25, 2023, ARP staff accepted Jordan's cleaning supplies complaint (which had been on backlog) and assigned it the same number (MSP-23-474) as the vermin grievance. Doc. 40-8 (cleaning supplies complaint placed on backlog); Doc. 44-1 (vermin and cleaning supplies grievances assigned the same number).

25, 2023, and is currently pending. Doc. 38-4 at 1 (cleaning supplies grievance accepted); Doc. 44-1 (cleaning supplies grievance still pending). Jordan did not receive a Second Step Response form regarding his complaint about cleaning supplies; in addition, the grievance was backlogged and was not accepted for review until after the instant case was filed. Doc. 44-1 (no Second Step form); Doc. 38-4 (grievance backlogged); Doc. 1 (case filed December 1, 2022). As such, he did not exhaust his administrative remedies by way of receiving a Second Step Response Form before filing suit.

### No Exhaustion of Administrative Remedies Based on the "90-Day Rule" (Delayed MDOC Response to Grievances)

As set forth in the discussion regarding the operation of the Administrative Remedy Program, a second path to complete the ARP process exists: The process is deemed complete when prison officials delay their response to the grievance – and 90 days elapse from the beginning of the process without the issuance of a Second Step Form to complete it. Inmate Handbook, Chapter VIII, Paragraph VIII(A). There were significant delays in the handling of two of Jordan's grievances (laundry and vermin).[8] The question becomes, "Under the 90-day rule, were any of these grievances exhausted before he filed instant suit?" As discussed below, they were not.

Even if the court used the date Jordan signed these three grievances as the ARP beginning date, under the 90-day rule, he filed the instant complaint before any of them were exhausted.[9] He

---

[8] For the sake of completeness, the court will also consider the cleaning supplies grievance in this analysis, even though it was placed on backlog until long after Jordan filed the instant suit.

[9] As discussed above, the date the ARP process begins is when the inmate's complaint is accepted as a proper grievance – which occurs *after* he signs it. *See* Inmate Handbook, Chapter VIII, Paragraph IV(H). For the purposes of this discussion the court will compute the earliest possible exhaustion dates by proceeding as if Jordan's ARP complaints were accepted as grievances on the day he signed them.

signed his ARP regarding laundry service on October 3, 2022. Doc. 38-3 at 2. The 90-day deadline for MDOC to complete the ARP process for the laundry grievance would have expired on January 1, 2023. He signed his grievance regarding vermin on October 9, 2022. Doc. 38-4 at 2. The 90-day deadline for MDOC to complete the vermin grievance would have expired on January 7, 2023. He signed his cleaning supplies grievance on November 9, 2022; the 90-day deadline for MDOC to respond to that grievance expired on February 7, 2023. Doc. 38-4 at 3. Hence, at the earliest, Jordan's grievances could have been exhausted on January 1, 2023 (laundry), January 7, 2023 (vermin), and February 7, 2023 (cleaning supplies). As discussed above, under the "mailbox rule," Jordan filed the instant suit somewhere between November 16, 2022, (when he signed the complaint) and December 1, 2022 (when it was stamped "Filed") – *before* the 90-day period to exhaust any of his grievances ran. *See* Doc. 1. As such, even under the "90-day rule" of the Administrative Remedy Program, none of his three grievances were exhausted before he filed the instant suit.

## Conclusion

For the reasons set forth above, the instant case will be dismissed without prejudice for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 14th day of December, 2023.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE